UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Pierret, et al                                                                   Civil Action No. 09-0442

versus                                                                             Judge Tucker L. Melançon

American Family Life Assurance                         Magistrate Judge C. Michael Hill
Company of Columbus

MEMORANDUM RULING

Before the Court are plaintiffs', Donald P. Pierret and Madeline Gray, Motion for Summary Judgment [Rec. Doc. 15], an Opposition thereto by defendant, American Family Life Assurance Company of Columbus ("Aflac"), [Rec. Doc. 19], a cross Motion for Summary Judgment filed by Aflac [Rec. Doc. 20] and plaintiffs' Opposition thereto [Rec. Doc. 33][1]. For the following reasons, plaintiffs' Motion will be denied and defendant's Motion will be granted.

I. FACTUAL BACKGROUND

Eric P. Pierret ("Pierret") was employed by Quality Machine Services, LLC. and was enrolled in Quality Machine Services' employee welfare benefit plan. *R. 20-4, Defendant's Statement of Uncontested Material Facts*. Pierret applied for

---

[1] Plaintiffs' Opposition was filed on November 2, 2009, pursuant to leave granted in a Rule 16 conference by Magistrate Judge C. Michael Hill on October 20, 2009. *R. 32.*

individual accident insurance coverage though his employer for himself and Aflac subsequently issued an "Accident-Only Policy," Number PC649517 ("the Policy"), with an effective date of October 15, 2004. *Id.; R. 15-5, Plaintiff's Statement of Uncontested Material Facts; AFLAC (Administrative Rec.) 00006-00007.* The Policy is an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 *et seq.* (the "Plan"). *R. 20-4, Exh. A, Policy, AFLAC Adm. Record 00001-28.* The Policy provided financial benefits to the beneficiary of an employee in the event of a covered accidental death. *Id. at AFLAC 00007, 00019.* Plaintiffs, Donald P. Pierret and Madeline Gray, are the parents of Pierret and are the named beneficiaries of the Policy. *Id.* The Plan identifies Aflac as the claims administrator for the Policy and provides that Aflac is responsible for processing claims and administering benefits under the Policy's terms. *R. 20-4, Exh. 1, Aff. Of LeBlanc, Exh. 2, Plan, Art. VI, Plan Administration, §6.01.*

On May 17, 2008, at or around 2:10 a.m., Pierret and several friends were dropped off at the parking lot of a Borden's ice cream store located in Lafayette, Louisiana. Pierret and his friends intended to go to the Teche Federal Bank parking lot across Jefferson Street from Borden's store. *R. 20-4, AFLAC Adm. Record, 00089-92.* At or around that time, Chalsea Lewis was operating a 2001 Chevrolet traveling the speed limit on Jefferson Street. *Id. at 00074, 00088, 00113.* As Pierret and his

friends were crossing Jefferson Street, they walked between stopped vehicles. At some point during the crossing, Pierret passed up his friends and ran into the east bound lane of traffic and into the path of Lewis' moving Chevrolet, hit the front of the vehicle, flew over the vehicle, and landed on the ground next to another stopped vehicle on the driver's side. *Id. at 00088, 00091, 00095.* On May 22, 2008, Pierret died as a result of injuries he sustained in the incident.

Pierret's blood alcohol level at the time of the incident was 217.1 mg/dl (0.217g%) and he tested positive for THC (Tetrahydrocannadinol), the active chemical in marijuana. *Id. at 00096.* The result of Lewis' voluntary breathalyzer test for alcohol consumption was 0.000g%. *Id. at 00091, 00094.* In Lewis' statement given to Corporal Michael J. Onezime, the policeman investigating the crash, she stated that Pierret jumped into the front of her car and hit the windshield. *Id. at 00082.* Corporal Onezime concluded that the actions of Pierret were the leading cause of the crash. *Id. at 00096.* Pierret's death certificate lists alcohol intoxication as one of the underlying causes of death. *Id. at 00125, Death Certificate.*

Following Pierret's death, plaintiffs made a claim for benefits under the Policy. In correspondence dated January 12, 2009, Aflac, as the Plan Administrator, denied plaintiff's claim benefits under the Policy based on the intoxication exclusion. Part 2, "Limitations And Exclusions," (B) (1), pages 6 and 7, of the Policy contains the

3

intoxication exclusion, which provides in pertinent part:

> B.  We will not pay benefits for an accident or sickness that is caused by or occurs as a result of a covered person's:
>
> 1.  Participating in any activity or event, including the operation of a vehicle, while under the influence of a controlled substance (unless administered by a Physician and taken according to the Physician's instructions) or while intoxicated ("intoxicated" means that condition as defined by the law of the jurisdiction in which the accident occurred); . . .

Plaintiffs filed this action against Aflac on February 6, 2009, in the Sixteenth Judicial District Court for the Parish of St. Martin, State of Louisiana and it was removed to this Court by Aflac on March 18, 2009. *R. 1*. In their state court Petition, plaintiffs allege that Aflac's denial of coverage was "arbitrary and capricious and without just cause," and therefore, plaintiffs assert a claim for "penalties pursuant to La. R.S. 22:656." *R. 1, Petition*, ¶ VII. Plaintiff's further allege claims for the Policy benefits and all "penalties, interest and attorney's fees awardable under Louisiana law." *Id. at ¶¶ VII, IX.*

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v.*

*Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue

---

[2] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

5

worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id*

### III. LAW & ANALYSIS

In their motion for summary judgment, plaintiffs contend that, while it is clear that "when their son died, he was in fact intoxicated," he was not "participating in" an "activity or event" at the time he died. *R. 15.* In its opposition and cross motion for summary judgment, defendant avers: (1) ERISA preempts all of plaintiffs' state

law claims; and (2) plaintiffs' ERISA claim for benefits under the Policy should be dismissed as there is no evidence that Aflac as the Plan Administrator abused its discretion in denying plaintiffs' claim based on the Policy's intoxication exclusion.

### 1. *Plaintiff's State Law Claims Are Preempted*

Plaintiffs allege state law claims for benefits, penalties and attorney's fees. There is no dispute that plaintiff's claim for payment in this case is governed by ERISA. *R. 33.* The nature of the allegations presented in plaintiffs' complaint, as well as the relief sought, indicate that plaintiffs' claims involve the type of claims preempted by ERISA: a claim directly affecting the relationship between the traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries.[3] Accordingly, the Court finds that ERISA preempts all state law claims related to plaintiffs' employee benefit plan.

### 2. *Plaintiff's Claims For Accidental-Death Benefits Under The Policy*

Plaintiffs contend that Aflac abused its discretion in determining that Pierret

---

[3] The ERISA preemption clause states that ERISA "shall preempt any and all state laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. §1144(a). "A state law 'relates to' an employee benefit plan if it has a connection with or reference to such a plan." *Smith v. Texas Children's Hospital,* 84 F.3d 152, 155 (5th Cir. 1996). "Thus, ERISA preempts a state law claim 'if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and the beneficiaries.'" *Id.* (quoting *Hubbard v. Blue Cross & Blue Shield Assoc.,* 42 F.3d 942, 945 (5th Cir. 1995)).

was "participating in any activity or event" at the time of his death under the terms of the Policy's "intoxication exclusion." Aflac asserts that the company based its decision to deny accidental-death benefits on the undisputed facts that Pierret was intoxicated and under the influence of marijuana when he participated in the activity of walking with his fiends, crossing the street and running into a moving vehicle. Aflac maintains that its determination that Pierret's actions fell within the scope of the "intoxication exclusion" was therefore a legally correct interpretation of the Policy. *R.20.*

The Plan provides that "[t]he Plan Administrator shall have the exclusive right to interpret the Plan and to decide all matters arising thereunder, including the right to make determinations of fact, and construe and interpret possible ambiguities, inconsistencies, or omissions in the Plan and the SPD [Summary Plan Description] issued in connection with the Plan." *R. 20, Exh. 1, Aff. Of Leblanc, Exh. 2, Plan, Art. VI, §6.01.* Because the Plan gives Aflac discretionary authority to construe the terms and apply its provisions, its decision is reviewed under an abuse of discretion standard. The Court applies a two-step process when conducting this abuse of discretion review. *Stone v. UNOCAL Termination Allowance Plan,* 570 F.3d 252, 257 (5th Cir. 2009). "First, [it] must determine whether [Aflac's] determination was legally correct. If so, the inquiry ends and there is no abuse of discretion.

8

Alternatively, if the Court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion." *Id*.

When, as here, Aflac, the insurer of Plan benefits, also determines eligibility for benefits, a conflict of interest exists. "In *Metropolitan Life Insurance, Co. v. Glenn*, --- U.S. ----, 128 S.Ct. 2343 (2008), the Supreme Court was faced with the issue of 'whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations,' and if so, how that conflict should be taken into account on judicial review. 128 S.Ct. at 2347. The Court held that a conflict of interest does exist where "the entity that administers the plan ... both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." Id. at 2346. The Court further held that 'a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits.' *Id*." *Stone*, 570 F.3d at 257-258. "Only upon reaching this second step must the Court weigh as a factor whether the administrator operated under a conflict of interest." *Id*.[4] Therefore, if the

---

[4] The Fifth Circuit has stated that the U.S. Supreme Court's opinion in *Metropolitan Life Insurance Company v. Glenn*, --- U.S. ----, 128 S.Ct. 2343 (2008), superseded the "sliding scale approach" followed by courts to assess the impact of a conflict of interest. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 n. 3 (5th Cir.2009). While the Fifth Circuit joined the majority of other circuits in no longer applying the "sliding scale approach," "much of [the] 'sliding scale' precedent is compatible with the Supreme Court's newly clarified 'factor' methodology, and

Court concludes the decision was legally correct, it need not consider whether there was a conflict of interest or an abuse of discretion.

### A. Legally Correct Interpretation

The Court must consider "three factors when deciding whether an interpretation is legally correct: '(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.' 'The most important factor in this three-part analysis is whether the administrator's interpretation was consistent with a fair reading of the plan.'" *Stone v. UNOCAL Termination Allowance Plan,* 570 F.3d 252, 258 (5th Cir. 2009)(quoting *Crowell v. Shell Oil Co.,* 541 F.3d 295, 312 (5th Cir. 2008). "Under any ERISA plan, the eligibility for benefits is governed in the first instance by the plain meaning of the plan language. ERISA plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience. Thus, plan provisions must be interpreted as they are likely to be understood by the average plan participant, consistent with the statutory language." *Stone* at 260. Here, the inquiry is whether

---

*Glenn* does not supercede that precedent to the extent it reflects the use of a conflict as a factor that would alter the relative weight of other factors." *Id.* As plaintiffs do not allege or provide any evidence that Aflac, as both underwriter and administrator of the Policy, had a conflict of interest in evaluating plaintiffs' claim for benefits, the Court must review the benefit determination with "only a modicum less deference" than it would otherwise employ. *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389 (5th Cir. 2007).

Aflac's interpretation of the Plan was legally correct, as plaintiffs do not allege factors one (1) or three (3). *R. 1.* Thus, the Court must initially consider whether or not Aflac gave a fair reading of the Policy in its interpretation of the "intoxication exclusion."

Plaintiffs submit without support that the Policy "must be construed as a whole, and one portion cannot be construed separately at the expense of disregarding another." *R. 15.* They contend that because the "intoxication exclusion" appears in a list of ten excluded activities, all of which pertain to some type of high-risk activity, the terms "activity" and "event" must be construed in connection with these other high-risk activities, as opposed to simply crossing a street. *R. 15.* Plaintiffs further submit that Aflac's interpretation of the terms "participating in any activity or event" can not apply to Pierret who was "simply crossing a street." *R. 33.* Plaintiffs argue that Aflac's approach to the meaning of these terms could conceivably result in someone sitting in a chair at home who happened to be intoxicated and died, would be denied benefits under the intoxication exclusion. *Id.*

Aflac argues that the administrator interpreted the exclusion terms "[p]articipating in any activity or event" in the ordinary and popular sense as would a person of average intelligence and experience. *R. 20.* Aflac asserts that the word "participating" is defined by the American Heritage Dictionary, 905 (2d Ed. 1982)

as "[t]o take part," "join or share with others", and "[t]o share in" and the word "activity", as "[t]he state of being active," or "[e]nergetic action or movement." Also, Aflac cites federal and state court cases describing walking and crossing the street as activities in support of its contention that "Pierret was clearly participating in an activity when he was walking with his friends, began crossing the street, and ran into a moving vehicle." *Id.* Aflac cites *American Family Life Assur. Co. [Aflac] v. Russell*, 700 N.E.2d 1174,1177 (Ind.App.,1998) in which the Indiana state appellate court considered the identical intoxication exclusion at issue in this case. Aflac asserts that the case supports its position that the exclusion applies if the insured was participating in "some" action or occurrence while legally intoxicated which caused or resulted in his death, rather than plaintiffs' contention that the insured must be in involved in an "organized activity or event."

In *Russell*, the insured died while he was "passed out" in his automobile, which was parked on the railroad tracks and hit by a train. The coroner ruled that the cause of death was "blunt force trauma, head and chest," but the coroner also found that acute ethanol intoxication contributed to his death. The court found that the intoxication exclusion plainly stated that the insured had to be participating in an event while intoxicated in order to invoke the exclusion. Because the deceased had "passed out" and was therefore not "participating in" any event that would exclude coverage under the policy, the Aflac intoxication exclusion did not apply. *Id.* In this

case, Pierret was clearly "participating in" an activity or event which triggered the intoxication exclusion.

The Court agrees that Aflac's interpretation of the intoxication exclusion was "governed by the plain meaning of the plan language." *Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286, 292 (5th Cir.1998). Further, Aflac interprets the exclusion terms "activity or event" in "an ordinary and popular sense as would a person of average intelligence and experience." *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 116 (5th Cir.1996). As to plaintiffs' contention that the exclusion terms must be interpreted in light of the "high-risk" activities in the Policy's list of excluded activities, the Court cannot fathom that a person of average intelligence would not conclude that running while intoxicated across the paths of oncoming cars traveling on a busy street at night is a "high-risk" activity.

## IV. CONCLUSION

Plaintiff's state law claims are preempted by ERISA. As the Plan Administrator's interpretation of the Policy's intoxication exclusion was legally correct there was no abuse of discretion and plaintiffs' claims for benefits were properly denied. Accordingly, AFLAC's Motion for Summary Judgment will be GRANTED.